United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARMENCITA S. HIPOLITO, on behalf
of herself and all others similarly situated,

                Plaintiff,

   v.

ALLIANCE RECEIVABLES
MANAGEMENT, INC., ET AL.,

                Defendants.
_____/

**Case No. C-05-0842 JCS**

**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); 3) AND DENYING PLAINTIFF'S MOTION TO STRIKE PURSUANT TO RULE 12(f) [Docket Nos. 18 and 20]**

## I.    INTRODUCTION

Plaintiff in this purported class action alleges that a collection letter that was sent to her by Defendants violated the Fair Debt Collection Practices Act. Defendants bring a Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("the Motion to Dismiss"). Plaintiff brings a Motion to Strike Pursuant to Rule 12(f) ("the Motion to Strike"). For the reasons stated below, the Motion to Dismiss is GRANTED. The Motion to Strike is DENIED.[1]

## II.    BACKGROUND

### A.    Facts

Hipolito had an account with Retailer's National Bank ("the Creditor"). First Amended Complaint, ¶ 7. In 2002 and 2003, Hipolito defaulted on her obligations to the Creditor. *Id*., ¶ 8. Sometime in early 2004, the Creditor referred the account to AllianceOne Receivables Management, Inc. and/or,

---

[1] Plaintiff also filed a Motion for Class Certification that was set for hearing on the same date. However, Plaintiff withdrew that Motion prior to the hearing.

1

**United States District Court**
For the Northern District of California

1  AllianceOne Inc. *Id*., ¶ 10.  AllianceOne Receivables Management is 100% owned by AllianceOne Inc.

2  (hereinafter, the Court refers to Defendants collectively as "AllianceOne"). *Id*., ¶ 4.  AllianceOne sent

3  Hipolito an initial collection letter on March 15, 2004 ("the Collection Letter").

4        The Collection Letter, in its entirety, reads as follows:

5        Your account has been listed with our office for collection by the referenced client.  If paid in full to
   this office, all collection activity will be stopped.

6

7        This debt may remain open on your credit report for up to seven years.  For your convenience, we
   can arrange for automatic deductions from your checking account.  Please feel free to call us if you
   wish to discuss this matter.

8

9        This communication is from a debt collector.  This is an attempt to collect a debt, and any
   information obtained will be used for that purpose.

10        Unless you notify this office within 30 days after receiving this notice that you dispute the validity of
    the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in

11  writing within 30 days from receipt of this notice, this office will: obtain verification of the debt or
    obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request of

12  this office within 30 days after receiving this notice, this office will provide you with the name and
    address of the original creditor, if different from the current creditor.

13

14  First Amended Complaint, Ex. A.

15        **B.**       **Procedural Background**

16        On February 28, 2005, Plaintiff initiated this action, alleging that the Collection Letter violated the

17  Fair Debt Collection Practices Act "(FDCPA"), 15 U.S.C. §§ 1692-1692o.  In her First Amended

18  Complaint("FAC"), Hipolito asserts that two statements in the Collection Letter violate the FDCPA.  First,

19  she alleges that the statement "If paid in full to this office, all collection activity will be stopped" (hereinafter,

20  referred to as "the pay-in-full language") violates the FDCPA because it is false, deceptive and misleading,

21  in violation of 15 U.S.C. § 1692e, and because it fails to convey effectively to Plaintiff her validation rights

22  under § 1692g. FAC ¶¶ 28-29.  According to Hipolito, the pay-in-full language "assumes the validity of

23  the debt and contradicts Plaintiff's right to dispute the debt and obtain verification."  FAC ¶ 14.  Second,

24  Hipolito asserts that language stating that "[t]his debt may remain open on your credit report for up to seven

25  years" (hereinafter, referred to as the "seven-year language") violates the FDCPA because it is false,

26  deceptive and misleading, in violation of § 1692e, and because it is prohibited as an "unfair or

27  unconscionable means to collect" under § 1692f.  FAC ¶¶ 31-34.

28

**United States District Court**
For the Northern District of California

C.     **The Motion to Dismiss**

AllianceOne moves to dismiss the First Amended Complaint on the basis that as a matter of law, neither of the statements of which Plaintiff complains violate the FDCPA.  With respect to the pay-in-full language, Defendants cite to cases in which courts have held that similar language did not violate the FDCPA.  Similarly, AllianceOne argues that the statement that negative credit information "may remain open" on Plaintiff's credit report is an accurate statement of the law and is in no way misleading or unfair.

In her Opposition, Plaintiff argues that the pay-in-full language is misleading and contradicts that validation notice because in using this language, "Defendants falsely state that the only way to stop collection is by payment in full."  Opposition at 5.  In support of this assertion, Plaintiff cites to cases in which courts have found that collection letters containing statements that contradict the validation notice violate the FDCPA.  Plaintiff argues further that the statement that the debt may remain open for seven years is a misstatement of the law and constitutes an implicit threat to report Plaintiff to a credit bureau if she does not respond when, in fact, the information has already been conveyed to a credit bureau.

D.     **Plaintiff's Motion to Strike**

In response to Defendants' Motion to Dismiss, Plaintiff brings a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure, asking the Court to strike three sentences from the Motion to Dismiss on the basis that they are "immaterial, impertinent, and scandalous."

III.     **ANALYSIS**

A.     **The Motion to Strike**

Pursuant to Rule 12(f), the court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 7 defines the word "pleading" as "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served."  Motions and supporting declarations are not "pleadings" and therefore are not subject to rule 12(f).  *See* " *Sidney-Vinstein v. A. H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (holding that district court erred in striking motion under Rule 12(f) on the basis that a motion is not a

3

1    pleading).  Because Plaintiff objects to statements that are contained in a motion rather than in a pleading,

2    her Motion to Strike is DENIED.

3        **B.    The Motion to Dismiss**

4            **1.    Ruling on the Merits Prior to Addressing Class Certification**

5            Pursuant to Rule 23(c)(1), the district court must rule on the issue of class certification "[a]s soon as

6    practicable after the commencement of an action brought as a class action." Fed. R. Civ. P. 23(c)(1).

7    Some circuits have held that this provision requires that the court address class certification before making

8    any rulings on the merits of the case.  *See, e.g., Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d

9    270, 273-75 (10th Cir. 1977); *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 352-54 (7th Cir. 1975).

10   The Ninth Circuit, however, has held that the use of the word "practicable" in Rule 23(c) "leaves much

11   room for discretion."  *Wright v. Schock*, 742 F.2d 541, 543 (9th Cir. 1984) (citation omitted).  Thus,

12   "[u]nder the proper circumstances – where it is more practicable to do so and where the parties will not

13   suffer significant prejudices – the district court has discretion" to rule on the merits before reaching the class

14   certification question.  *Id*.  For example, in *Wright*, the Court of Appeals held that it was not an abuse of

15   discretion for the district court to rule on the defendants' summary judgment motion prior to addressing

16   class certification because the defendants "consented to the chosen procedure."  *Id*. at 544.  Under such

17   circumstances, the court concluded the defendants had waived "the protection afforded by an early ruling

18   on class certification."  *Id*

19           At oral argument, Defendants expressly waived the protection of an early ruling on class

20   certification, requesting that the Court rule on their Motion to Dismiss even though Plaintiff has now

21   withdrawn her motion for class certification.  Under these circumstances, the Court concludes that it may

22   rule on Defendant's Motion to Dismiss at this time.

23           **2.    Legal Standard**

24           A complaint should not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6)

25   "unless it appears beyond doubt that a plaintiff could prove no set of facts in support of his claim which

26   would entitle him to relief."  *During v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (quoting

27   *Conley v. Gibson*, 355 U.S. 41 (1957)).  In ruling on a motion to dismiss, all allegations of material fact

28   are taken as true and construed in the light most favorable to the non-moving party.  *Id*.  Exhibits attached

**United States District Court**
For the Northern District of California

4

to the complaint may be considered as part of the complaint for the purposes of a Rule 12(b)(6) motion. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990).

"In the 9th Circuit, the court – and not the jury – determines whether a particular collection letter violates the FDCPA." *Anderson v. Credit Collection Services, Inc.*, 322 F.Supp. 2d 1094, 1096 (S.D. Cal. 2004) (citing *Swanson v. Southern Oregon Credit Services, Inc.*, 869 F.2d 1222, 1225-26 (9th Cir. 1988) and *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997)).  In determining whether a violation has occurred, the Court views the letter from the perspective of a hypothetical "least sophisticated debtor." *See Terran*, 109 F.3d at 1431.

### 3.    Pay-in-Full Language

Hipolito argues that the pay-in-full language in the Collection Letter violates the FDCPA because it would be read by the least sophisticated debtor as stating that the *only* way to stop collection is by payment in full when in fact, collection activity must also be discontinued if a debtor demands verification of the debt or directs the debtor to cease contacts.  Therefore, Plaintiff asserts, the letter fails to satisfy the requirements of 15 U.S.C. § 1692g.   The Court disagrees.

Under 15 U.S.C. § 1692g(a), "debt collectors must send consumers written notice containing certain information regarding the alleged debt." *Swanson*, 869 F.2d at 1224.  The section reads as follows:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

United States District Court
For the Northern District of California

1   15 U.S.C. § 1692g(a).  The requirements of 1692g(a) are "not satisfied merely by the inclusion of the

2   required debt validation notice; the notice Congress required must be conveyed effectively to the debtor."

3   *Swanson*, 869 F.2d at 1225.  The court in *Swanson* explained, "[i]t must be large enough to be easily read

4   and sufficiently prominent to be noticed – even by the least sophisticated debtor. . . . Furthermore, to be

5   effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in

6   the initial communication from the collection agency." *Id*.

7       In *Swanson*, a collection agency sent the plaintiff a notice that contained, the following message:

8   IF THIS ACCOUNT IS PAID WITHIN THE NEXT 10 DAYS IT WILL NOT BE
    RECORDED IN OUR MASTER FILE AS AN UNPAID COLLECTION ITEM.  A *GOOD*
9   *CREDIT RATING  – IS YOUR MOST VALUABLE ASSET.*

10  *Id*. at 1225.  Below this notice, in much smaller type, the notice contained the language required by §

11  1692g ("the validation notice").  The debtor alleged that the communication violated the FDCPA because

12  the language in the validation notice was overshadowed and contradicted by the language in the larger type.

13  The court agreed, concluding that:

14  The prominence and message of the "master file" and "most valuable asset" language, lead the least
    sophisticated consumer, and quite probably even the average debtor, only to one conclusion: he
15  must ignore his right to take 30 days to verify his debt and act immediately or he will be
    remembered as a deadbeat in the "master file" of his local collection agency and will, accordingly,
16  lost his "most valuable asset," his good credit rating.

17  *Id*. at 1226.

18      Applying the rules announced in *Swanson*, the Ninth Circuit reached the opposite result in *Terran*

19  *v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997).  In that case, the collection agency sent the plaintiff the

20  following letter, in a uniform typeface:

21  Please be advised that this office represents MONTGOMERY WARD CREDIT CORP with
    whom you have an outstanding balance of $546.63.  Unless an immediate telephone call is made to
22  J SCOTT, a collection assistant of our office at (602) 258-8433, we may find it necessary to
    recommend to our client that they proceed with legal action.
23  Unless you notify us in writing within thirty (30) days after receipt of our initial notice that you
    dispute the validity of this debt, or any portion thereof, we will assume the debt to be valid. Upon
24  such notification, we will obtain verification of the debt or a copy of the judgment against you and a
    copy of such verification or judgment will be mailed to you. Upon your written request within the
25  thirty (30) day period described above we will provide you with the name and address of the
    original creditor if different from the current creditor.

26

27

28

6

United States District Court

For the Northern District of California

1   *Id.* at 1430.  The plaintiff alleged the letter violated § 1692g because the second sentence of the letter

2   overshadowed and contradicted the language in the validation notice.  The court rejected the plaintiff's

3   argument.

4           The court in *Terran* began by reviewing cases in other circuits in which courts had held that a

5   written communication violated § 1692g.  The court concluded, "In each of these cases, payment was

6   demanded within a time period less than the statutory thirty days granted to dispute the debt *and* this

7   demand was communicated in a format that emphasized the duty to make payment, and obscured the fact

8   that the debtor had thirty days to dispute the debt." *Id.* at 1433.  In contrast, the communication in *Terran*

9   did not overshadow the validation notice because it did not demand immediate *payment* but rather, only

10  requested an immediate telephone call. *Id.* at 1434.  Moreover, "[t]he text of the letter [was] uniformly

11  presented in ordinary, same-size font [and] [n]o emphasis [was] placed on any particular statement . . . ."

12  On this basis, the court held that the communication did not violate § 1692g.

13          In *Renick v. Dun & Bradstreet Receivable Management Services*, 290 F.3d 1055 (9th Cir.

14  2002), on which Defendants also rely, the Ninth Circuit again found that § 1692g was not violated.  There,

15  the collection agent, Dun & Bradstreet, sent two collection letters to the plaintiff, who had defaulted on his

16  telephone bill. *Id.* at 1057.  The first letter included the notice required under § 1692g(a) that the plaintiff

17  had the right to dispute the validity of the debt within 30 days and that the debt collector would then

18  provide verification of the debt. *Id.*  Twenty days later, a second notice was sent. *Id.*  The front of the

19  second notice carried the words "[u]se the tear-off portion of this letter . . . to send your payment today."

20  *Id.*  The back of the notice carried the required validation information and the words "PROMPT

21  PAYMENT IS REQUESTED." *Id.*  The plaintiff asserted that the request for "PROMPT PAYMENT"

22  and payment "today" was misleading and contradicted the information in the validation notice that he had

23  30 days to dispute the debt. *Id.*  The court disagreed.  The court held:

24          Dun & Bradstreet's second collection notice did not violate the validation of debts provision of the
            FDCPA, 15 U.S.C. § 1692g(a). The instruction that Renick "[u]se the tear-off portion of this letter
25          ... to send your payment today" was in the same font as the surrounding text; was not emphasized in
            any other way; was in the nature of a request rather than a demand; and carried no sense of
26          urgency. The request therefore "d[id] not overshadow the language in the notice that the alleged
            debtor has thirty days in which to dispute the debt." *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th
27          Cir.1997). Similarly, the statement on the reverse that "PROMPT PAYMENT IS REQUESTED"
            was in the same font as the accompanying validation notice; was followed by a statement informing
28          Renick that he had 30 days to challenge the debt's validity; and did not convey a threat that could

                                                        7

induce Renick to "ignore his right to take 30 days to verify his debt and act immediately." *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1226 (9th Cir.1988). The request for a prompt payment therefore "d[id] not contradict the admonition that the debtor has thirty days to contest the validity of the debt" and "d[id] not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt." *Terran*, 109 F.3d at 1434.

*Id*.

Here, the pay-in-full language does not require payment within a specific time period that is less than the thirty-day period specified in the validation notice. *See Terran,* 109 F.3d at 1433.   In addition, the pay-in-full language does not state that payment is the *only* means to end Defendants' collection activities, contrary to the assertion in Plaintiff's Opposition brief.  Rather, it would be evident even to the least sophisticated debtor that the debtor also had the alternative of challenging the debt within 30 days, as stated in the verification information that follows the pay-in-full language, in the same font. Under these circumstances, the Court concludes, as a matter of law, that the pay-in-full language is not misleading and does not violate § 1692g.

This result is supported by a Fifth Circuit case addressing language that is very similar to the language at issue here, *Peter v. G.C. Services LP*, 310 F.3d 344 (5th Cir. 2002).   In *Peter*, a collection agency sent the plaintiff a notice that included on the front of the notice the following language: "FULL COLLECTION ACTIVITY WILL CONTINUE UNTIL THIS ACCOUNT IS PAID IN FULL . . . TO AVOID FURTHER COLLECTION ACTIVITY, YOUR STUDENT LOAN MUST BE PAID IN FULL." *Id*. at 347.  The back of the notice carried the required validation notice informing the debtor that she had 30 days to dispute the debt.  *Id*.  The plaintiff asserted that language on the front of the notice (quoted above) was misleading and obscured her right to dispute the debt within thirty days, thus violating § 1692g.  *Id*. at 350.  The court held that it was not.  *Id*.

The court in *Peter* reviewed the case law addressing § 1692g and concluded that courts – including the Ninth Circuit – have generally found violations of § 1692g where "payment is demanded in a concrete period shorter than the 30-day statutory contest period," *Id*.   It noted that courts have also found that demands for "immediate payment" or "payment now" may contradict the validation notice, "at least where their relationship to the 30-day window is not explained."  *Id*. (citing *Savino v. Computer Credit Inc.*, 164 F.3d 81, 86 (2d Cir. 1998)).  The court concluded that "[b]ecause the challenged language here did not demand payment in a specific time period shorter than 30 days," the letter did not violate § 1692g.

**United States District Court**
For the Northern District of California

1    Citing *Peter*, this Court in *Kalinina* found that language almost identical to the language in the

2    Collect Letter here did not violate § 1692g.  2004 WL 3187150 (N.D. Cal.).  In *Kalinina*, the collection

3    letter included, in addition to the required validation information, a statement that once payment was

4    received, the defendant would "[i]mmediately stop all recovery activity on this account." *Id*. at * 1.  Like

5    Hipolito, the plaintiff asserted this language was misleading because it obscured the fact that she could also

6    stop recovery activity by disputing the debt.  *Id*. at *3.  The court held that the language was not

7    misleading.  The court stated:

8              This argument fails as a matter of law.  While the letter does promise that Midland will stop
             recovery activity if payment is made, the letter does not state that the *only* way to stop recovery
9              activity on the account is to make prompt payment.  The letter also does not threaten legal action,
             and as a matter of law, cannot be read even by an unsophisticated debtor to so imply.

10

11    *Id.*  (citing *Peter*, 310 F.3d at 349-350).

12    The cases on which Plaintiff relies in her Opposition do not support a contrary result.  All but one of

13    these involve language that demanded either immediate payment or payment within a specified period that

14    was less than 30 days.  *See Bartlett v. Heibel*, 128 F.3d 479, 499 (7th Cir. 1997) (holding that § 1692g

15    was violated where collection letter stated that if the debtor did not pay or make arrangements for payment

16    within one week, the defendant would be entitled to sue); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32-33

17    (2d Cir. 1996) (holding that § 1692g was violated where collection letter stated that "IF YOU DO NOT

18    DISPUTE THIS CLAIM (SEE REVERSE SIDE) AND WISH TO PAY IT WITHIN THE NEXT 10

19    DAYS WE WILL NOT POST THIS COLLECTION TO OUR FILE" and second notice stated

20    "PAYMENT IN FULL WITHIN 5 DAYS IS NOW DEMANDED"); *Savino v. Computer Credit. Inc.*,

21    164 F.3d 81, 84 (2d Cir. 1998) (holding that § 1692g was violated where collection letter stated that "the

22    hospital insists on immediate payment"); *Graziano v. Harrison*, 950 F.2d 107, 109 (3rd Cir. 1991)

23    (holding that § 1692g was violated where collection letter threatened legal action if debt was not paid within

24    ten days).

25    Plaintiff's reliance on *Loughlin v. Collectcorp Corporation*, 2005 WL 326975 (N.D. Ill.) also is

26    misplaced.  In that case, the language in the collection letter was almost identical to the language here: "As

27    soon as we receive your payment in full on the above-noted account all collection activity will be stopped."

28    *Id*. at *1.  The plaintiff alleged the language violated the FDCPA and the defendant brought a motion to

**United States District Court**

For the Northern District of California

1  dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The court denied the motion on

2  the basis that in the Seventh Circuit, the question of whether a letter would be misleading to an

3  "unsophisticated consumer" (the standard applied in the Seventh Circuit) is a question of fact for the jury.

4  *Id*.  The court explained:

5      The Seventh Circuit has repeatedly held that neither § 1692g claims for letters which confuse
       debtors as to their rights, nor § 1692e claims, should be dismissed pursuant to a 12(b)(6) motion

6      where the complaint alleges that a collection letter is confusing or misleading, because judges "are
       not good proxies for the 'unsophisticated consumers' whose interests the statute protects," and

7      because plaintiffs are allowed to provide evidence as to how the letter is understood by the
       unsophisticated consumer.

8

9  *Id*.  As discussed above, that is not the standard in the Ninth Circuit, where these questions are considered

10  questions of law to be resolved by the court.  Therefore, *Loughlin* is not on point.

11                    **4.      Seven-Year Language**

12        Hipolito asserts that the seven-year language violates the FDCPA because it is a misstatement of

13  the law and constitutes an implicit threat Defendant will report Hipolito to a credit bureau. Defendants

14  assert that Plaintiff's position is unsupported by any authority. The Court agrees.

15        First, there is no authority that suggests the seven-year language misstates the law in any way.

16  Rather, it is consistent with the Fair Credit Reporting Act ("FCRA"), which provides that "no consumer

17  reporting agency may make any consumer report containing . . . [a]ccounts placed for collection or charged

18  to profit and loss which antedate the report by more than seven years."  15 U.S.C. § 1681c(a)(4).

19        Second, the mere reference to credit reporting is not, by itself, a violation of the FDCPA.  *See*

20  *Harvey v. United Adjusters*, 509 F. Supp. 1218, 1221 (D. Or. 1981) (holding that FDCPA was not

21  violated where notice said, "[y]our credit is a valuable asset. Pay your bills and retain good credit");  *Spira*

22  *v. Ashwood Financial, Inc.*, 358 F. Supp. 2d 150, 160 (E.D.N.Y.  2005) (holding that FDCPA was not

23  violated where collection letter stated that it was the defendant's policy "to report all unpaid accounts to a

24  major credit bureau after 30 days of this notice" and noting that "[t]he letter states that it is a collection letter

25  and to the extent that it threatens action, it merely reflects Defendant's policy, unrelated to Plaintiff's

26  response, and reinforces the widely known fact that failure to pay debts that are owed might adversely

27  affect one's credit rating and ability to obtain credit"); *Wright v. Credit Bureau of Georgia, Inc.*, 555 F.

28  Supp. 1005, 1007 (N.D. Ga. 1983) (holding that there was no violation of the FDCPA where name of

collection bureau included the words "credit bureau," reasoning that "the text of each letter sent by the defendants and the appearance of the name 'CBI COLLECTIONS' at the bottom of each letter and on the return envelope sufficiently inform the consumer that he has received only a dunning letter and not a threat to relay credit information to a credit reporting agency. If the defendants' letters contain any threat to a consumer's credit rating, the threat is at most a statement that the results of the defendants' collection efforts may some day affect the debtor's credit rating. Thus the letters convey no specific threat greater than the well-known fact, recognized by all consumers, regardless of the degree of their sophistication, that a failure to pay one's bills will affect his ability to obtain credit in the future"). Therefore, Plaintiff's complaint fails to the extent it is based on the seven-year language.

**IV.      CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. Plaintiff's Motion to Strike is DENIED. Because the Court concludes, based on the representations of Plaintiff's counsel at oral argument, that amendment would be futile, this action is dismissed, in its entirety, with prejudice.

DATED: July 15, 2005

      /s/ Joseph C. Spero
JOSEPH C. SPERO
United States Magistrate Judge